UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SONIA M. WRIGHT,

                    Plaintiff,                                    Case No. 1:11-CV-1245

v.                                                               HON. GORDON J. QUIST

AUTOZONE STORES, INC., AUTOZONE
INC., and AUTOZONERS, LLC,

                    Defendants.
_____/


**<u>OPINION</u>**

         Plaintiff, Sonia Wright, brought this action against Defendants for various claims arising out

of her employment and termination, including sex discrimination and retaliation in violation of Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the Elliott-Larsen

Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq*.  Defendant AutoZoners, LLC

(AutoZone) has filed a Motion for Summary Judgment (docket no. 35).[1]  For the reasons set forth

below, the Court will grant AutoZone's motion in part and deny it in part.[2,3]

_____

         [1]Wright has requested oral argument on the motion.  However, the motion has been fully briefed, Defendants' lead counsel is in Florida, and the Court believes oral argument is not necessary.  W.D.Mich. LCivR 7.2(d).

         [2]Wright has abandoned her age harassment, age discrimination, and Equal Pay Act claims.  (Pl.'s Resp. Br., Docket no. 40, Page ID 712.)  Thus, Wright's remaining claims are: three Title VII claims (sexual harassment, sex discrimination, and retaliation), and three state-law claims (sexual harassment, sex discrimination, and retaliation).

         [3]In response to Wright's abandonment of her age harassment, age discrimination, and Equal Pay Act claims, AutoZone asks this Court for fees and costs pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 (providing costs, expenses, and attorney's fees incurred when an opposing attorney "unreasonably and vexatiously" multiplies proceedings in a case).  (Def.'s Reply Br., Docket no. 43, Page ID 1116.)  AutoZone has not substantiated its claim nor demonstrated compliance with Rule 11, so the Court will deny AutoZone's request.

# I. FACTUAL BACKGROUND

On or about November 9, 2005, AutoZone hired Wright as a Parts Sales Manager.[4] (EEOC Charge, Ex. A, Docket no. 40, Page ID 740.) Sometime after May 2006, Brian Waldschmidt became the Store Manager for the AutoZone store in Benton Harbor, Michigan, where Wright worked. (Waldschmidt Dep., Ex. G, Docket no. 40, Page ID 930, 938.) As Store Manager, Waldschmidt was Wright's immediate supervisor. During her employment, Wright frequently expressed her interest in promotion. (Wright Dep., Ex. 1, Docket no. 36, Page ID 422.) AutoZone did not have a formal, written procedure for posting job promotion and transfer opportunities. Promotions and transfers were often requested verbally and processed without formal interviews. (Wright Dep., Ex. D, Docket no. 40, Page ID 806; Marshall Dep., Ex. E, Docket no. 40, Page ID 842, 844.)

After working with Waldschmidt for some time, Wright became concerned that Waldschmidt "really had a problem with women." (Wright Dep., Ex. D, Docket no. 40, Page ID 807.) Wright was concerned that Waldschmidt and the district manager, Gary Bailey, would not promote her because she was a woman (*id.* at 781, 786), and Waldschmidt was looking for a reason to fire her (*id.* at 786). As evidence that Waldschmidt and Bailey would not promote her because she was a woman, Wright cites statements by Waldschmidt and Bailey that other employees have reported to her.[5] Wright also alleges that similarly situated male employees were promoted although she was more qualified for promotion. For example, Wright alleges that Peter Marshall, a male employee

---

[4]AutoZone initially hired Wright in January 1999 as a full-time salesperson, but in March 2000, Wright left voluntarily to spend more time with her children. (Wright Dep., Ex. 1, Docket no. 36, Page ID 413.)

[5]For example, another former AutoZone employee, Dremaynee Whistant, told Wright that "everybody in the [AutoZone] commercial department has heard [Waldschmidt] say that he wouldn't want to buy auto parts from a woman." (Wright Dep., Ex. D, Docket no. 40, Page ID 794.) Wright also testified that another employee, Albert Dixon, heard Bailey say that he would not promote another female in his district. (*Id.* at 786.) These statements are inadmissible hearsay, *see* note 7.

with less experience than Wright, was promoted to the same position that Wright held, but just a few months later was promoted to the position of Commercial Sales Manager, a position for which Wright had expressed an interest. (Pl.'s Resp. Br., Docket no. 40, Page ID 728–29; Marshall Dep., Ex. E, Docket no. 40, Page ID 844.) Waldschmidt approached and selected Marshall for both the Parts Sales Manager and Commercial Sales Manager positions. (Marshall Dep., Ex. E, Docket no. 40, Page ID 843–44.) Waldschmidt never conducted an interview. (*Id.*) Waldschmidt told Marshall that although Bailey would generally interview candidates, Waldschmidt and Bailey were "so close that [Bailey] would trust [Waldschmidt's] decision." (*Id.*)

Similarly, Wright alleges that Donny Terlisner was promoted to the position of Assistant Store Manager, even though Wright was more qualified. (Wright Dep., Ex. D, Docket no. 40, Page ID 781.) Terlisner testified that he believed Wright should have been promoted to the position because she had more years of experience at AutoZone, knew store policy better, had a better understanding of how the computers operated, and knew how to find things. (Terlisner Dep., Ex. I, Docket no. 40, Page ID 1036). At one point, when Waldschmidt promoted someone other than Wright to be a Commercial Sales Manager,[6] Wright expressed to Terlisner her concern that she was not hired because she was female. (*Id.*) Terlisner approached Waldschmidt and asked why he did not promote Wright to the Commercial Sales Manager position even though she was qualified for it. (*Id.* at 1039.) Waldschmidt responded that he did not think Wright "could handle it." (*Id.*)

At various times during her employment, Wright alleges that she reported to her supervisors her concerns that she was being treated unequally on the basis of her sex. For example, sometime before June 2009, Wright confronted Waldschmidt about his scheduling practices because he

---

[6]Wright alleges that a Commercial Sales Manager position became available multiple times during her tenure at AutoZone but she was never selected for the promotion.

scheduled her to close the store more frequently than male employees who held the same position that Wright held. (Wright Dep., Ex. D, Docket no. 40, Page ID 768, 769; Marshall Dep., Ex. E, Docket no. 40, Page ID 855; Blackamore Dep., Ex. F, Docket no. 40, Page ID 899.) According to Wright, she approached Waldschmidt about his unequal treatment of her on "more than one occasion." (Wright Dep., Ex. D, Docket no. 40, Page ID 786.) Sometime in 2009, Wright also complained to Bailey about Waldschmidt's unequal treatment of her. (*See id.* at 785.) Additionally, on or about July 27, 2009, Wright called Billy Fowler, Regional Human Resources Manager for AutoZone, to complain that the work environment was hostile toward women, that Waldschmidt had contributed to the hostility, and Bailey had not acted to address it. (*Id.* at 785.) Waldschmidt denies that Wright has complained about harassment or unequal treatment. (Waldschmidt Dep., Ex. G, Docket no. 40, Page ID 948–49.) Fowler attests that Wright never reported any alleged discrimination or harassment to him. (Fowler Decl., Ex. 3, Docket no. 37, Page ID 553.)

On July 30, 2009, Wright had an altercation with coworker Dondrell Blackamore. Wright had asked three of her coworkers—Blackamore, Joe Simms, and Nick Brown—to the break room to talk. (Ex. Y, Docket no. 42, Page ID 1093; *id.* at Ex. AA, Page ID 1100; *id.* at Ex. CC, Page ID 1106.) She told them that the conflict between her and Waldschmidt had nothing to do with them and that she refused to be harassed at her job. (Ex. Y, Docket no. 42, Page ID 1093; *id.* at Ex. AA, Page ID 1100; *id.* at Ex. CC, Page ID 1106.) Blackamore responded to Wright, "nobody give a fuck what [she] would say," and for Wright to "go kill [herself], go somewhere and die because nobody gave a fuck what [she] was talking about" and called Wright a "cockeyed bitch," among other names. (Wright Dep., Ex. D, Docket no. 40, Page ID 784, 785.) At some point, the employees returned to the sales floor and Wright used vulgarity toward Blackamore on the sales floor. (*Id.*) However, the parties dispute whether any customers were present. Waldschmidt was on vacation,

4

but Brown informed Waldschmidt of the altercation, and Waldschmidt relayed the information to Bailey and Human Resources.  (Waldschmidt Dep., Ex. G, Docket no. 40, Page ID 952–53.)

On August 4, 2009, Fowler went to the Benton Harbor AutoZone store to investigate the events of July 30, 2009.  Wright thought that Fowler was there to investigate her complaints about Waldschmidt's unequal treatment of her.  (Wright Dep., Ex. D, Docket no. 40, Page ID 814.) According to Wright, when she met with Fowler, he dismissed her harassment complaint, calling it a lie and telling her that she was "grasping for straws."  (*Id.* at 785.)  Wright testified that Fowler denied that the work environment was hostile from the beginning, that he did not allow her to show him evidence to support her complaint, and that he used harsh gestures and tones toward Wright. (*Id.*) There is no evidence that Fowler communicated Wright's complaint to higher level supervisors or followed any company policy to address or remedy her complaint.  Fowler testified that he did not inform Edward Lewis, Regional Manager of AutoZone, of Wright's complaint.  (Fowler Decl., Ex. 3, Docket no. 37, Page ID 553.)

Fowler took statements from seven AutoZone employees about the altercation.  In addition to Blackamore, two employees stated that they had witnessed at least one customer in the store when Wright used "cursing" or "swear words," and one additional employee stated that Wright had yelled loudly enough for customers to hear.  (Exs. Y–EE, Docket no. 42.)  First, Randy Lambrecht—whom Wright alleges is a relative of Waldschmidt (Wright Dep., Ex. D, Docket no. 40, Page ID 796)—stated that Wright "was cursing . . . in front of customers."  (Ex. BB, Docket no. 42, Page ID 1103.)  Second, although Brown could not recall specific details, he stated that Wright used "swear words," including the word "fuck," while customers were present.  (*Id.* at Ex. CC.)  Finally, Simms stated that Wright called Blackamore a "bitch" and "motherfuck[er]" and told Blackamore that he was "not shit for not talking to her."  (*Id.* at Ex. AA.)  Simms also stated that Wright spoke loudly

enough for customers to hear, although he never stated that there were actually customers present. (*Id.*)

According to Terlisner, the following day, a customer called to complain that a female employee in a gray shirt had raised her voice inappropriately in front of the customer.  (Ex. Z, Docket no. 42, Page ID 1097.)  The customer never stated that the female employee had used "curse words."  (*Id.*)  No one recorded the customer's name or contact information.  Wright admits that she "cursed back," at Blackamore, but denies that there were customers in the store.  (Wright Dep., Ex. D, Docket no. 40, Page ID 797; Ex. Y, Docket no. 42, Page ID 1093–94.)  Wright alleges that the purported customer complaint was fabricated and Waldschmidt pressured the employees who gave statements to Fowler to fabricate that there were customers in the store.  (*Id.* at 790.)

Blackamore testified that Waldschmidt did, in fact, ask him to lie about the fact that there were customers in the store.  (Blackamore Dep., Ex. F, Docket no. 40, Page ID 902, 906.) Blackamore agreed to lie in his statement because he was angry at Wright for reporting that he had recently left the store mid-shift to go to an auction.  (*Id.*)  Shortly thereafter, AutoZone terminated Wright for use of vulgarity, unprofessional behavior, and loss of confidence.  (Lewis Decl., Ex. 3, Docket no. 36, Page ID 549.)   Blackamore received a "serious violation" for inappropriate comments, but was not terminated.  (Waldschmidt Dep., Ex. 2, Docket no. 36, Page ID 542; Corrective Action, Ex. W, Docket no. 42, Page ID 1089.)

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741,

748 (6th Cir. 2012).  The burden to show that there is no genuine issue of material fact falls upon the party seeking summary judgment.  *Id.*  In evaluating the evidence, a court must draw all reasonable inferences in favor of the non-moving party.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 760 (6th Cir. 2012).  A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Once a moving party produces evidence establishing lack of a genuine issue of material fact, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*  The "mere existence of a scintilla of evidence" in support of a plaintiff's position is not sufficient to create a genuine issue of material fact.  *Anderson,* 477 U.S. at 252, 106 S. Ct. at 2512.

### III.  DISCUSSION

### A.  Hostile Work Environment Claims

Wright first alleges claims for sexual harassment based on a hostile work environment.  Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating, "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The Michigan Elliott-Larsen Civil Rights Act prohibits like conduct.  *Radtke v. Everett*, 442 Mich. 368, 382–83, 501 N.W.2d 155, 162 (1993) (citing Mich. Comp. Laws §§ 37.2103, 37.2202(1)(a)).  "Claims of [prohibited acts] under Title VII and the Michigan counterpart can be analyzed together because Michigan courts frequently 'turn to federal precedent for guidance in reaching [their] decision' to determine whether a claim has been established in discrimination cases." *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 824 (E.D. Mich. 2009) (quoting *Radtke*, 442 Mich. at 382, 501 N.W.2d at 162).  A plaintiff may establish a violation of Title VII by proving that discrimination

7

based on sex created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73, 106 S. Ct. 2399, 2408 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir. 1997). The statute grants employees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65, 106 S. Ct. at 2405. However, "not all workplace conduct that has sexual overtones can be characterized as harassment forbidden by the statute." *Black*, 104 F.3d at 825 (citing *Meritor*, 477 U.S. at 67, 106 S. Ct. at 2405–06). "Rather, harassment must affect a 'term, condition, or privilege' of employment in order for it to fall within Title VII's purview." *Id.*

To establish a prima facie case of hostile environment sexual harassment, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action. *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–30 (6th Cir. 1999) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998)). "In determining whether the alleged harassment is sufficiently severe or pervasive ... it is well-established that the court must consider the totality of the circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (en banc) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993)). The Supreme Court has observed:

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82, 118 S. Ct. 998, 1003 (1998). Therefore, a court must view evidence of alleged sexual harassment in "the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility" because "when the complaints are broken into their theoretical component parts, each claim is more easily dismissed." *Williams*, 187 F.3d at 562, 563.

In this case, AutoZone contests the third, fourth, and fifth elements of Wright's prima facie case: that the alleged harassment was based on sex, that it was sufficiently severe and pervasive to create a hostile or offensive work environment, and that the employer was aware of the harassment and failed to take corrective action. "[T]he law recognizes that non-sexual conduct may be illegally sex-based where it evinces anti-female animus, and therefore could be found to have contributed significantly to the hostile environment." *Id.* at 565 (internal quotation marks omitted). To establish that the harm was "based on her sex," Wright "'must show that but for the fact of her sex, she would not have been the object of harassment.'" *Id.* (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)); *see also Conley v. City of Findlay*, 266 F. App'x 400, 409 (6th Cir. 2008) ("Conley admits that she was not the target of overtly sexual behavior, but argues that nonsexual behavior may give rise to the creation of a hostile work environment. We agree."). "Thus, harassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement." *Williams*, 187 F.3d at 565 (surveying the federal courts of appeal).

In support of her claim that the harassment was "based on sex," Wright has produced evidence to support that:

- Waldschmidt made disparaging remarks about women, such as calling women "stupid" and "downgrading them," saying "they can't do stuff right." Waldschmidt told

Blackamore that he "hated" Wright, that Wright was "stupid," and that she got "on his nerves." (Blackamore Dep., Ex. F, Docket no. 40, Page ID 895.)[7]

- Waldschmidt would "talk down about women," and had "a male chauvinist-type attitude towards women," which at least one employee, Peter Marshall, opined carried over into how Waldschmidt viewed women in the workplace.[8] (Marshall Dep., Ex. E, Docket no. 40, Page ID 855.) Marshall testified that Waldschmidt was noticeably harder on women employees than men employees. (*Id.*) In Marshall's opinion, Waldschmidt was more likely to promote a man than a woman. (*Id.* at 856.)

- Waldschmidt gave male employees "preferential treatment" over Wright in scheduling shifts and vacation days. (Blackamore Dep., Ex. F, Docket no. 40, Page ID 899; Wright Dep., Ex. D, Docket no. 40, Page ID 795–96.) At times, Wright was scheduled to close the store almost every night. Compared to her male coworkers, Wright had "the crazy schedule." (Marshall Dep., Ex. E, Docket no. 40, Page ID 855.)

- Wright's coworkers used sexually inappropriate language in the workplace, heckled Wright, called her names—including "bitch" and "old ass woman," (Blackamore)—and failed to assist her with customer service, to the point where she felt a need to confront her coworkers. (Wright Dep., Ex. D, Docket no. 40, Page ID 783–84.)

- Waldschmidt knew that Wright had called human resources to complain about Waldschmidt's unequal treatment of her because she was a woman. (Blackamore Dep., Ex. F, Docket no. 40, Page ID 899.) Waldschmidt said that he wanted to find a way to "get rid" of Wright. (*Id.* at 900.) Prior to Wright's termination for allegedly using vulgarity in front of a customer, Waldschmidt "had been trying to make a paper trail" for firing Wright. (*Id.* at 901.)

- Waldschmidt and Blackamore conspired to have Wright disciplined: One morning when they opened the store, they decided they "just wanted to write her up," so they fabricated a workplace violation. They wrote her up for miscounting the cash register drawer the

---

[7]AutoZone argues that various statements by Waldschmidt and Bailey are hearsay, and therefore inadmissible for purposes of summary judgment. Federal Rule of Evidence 801 states in pertinent part: "A statement that meets the following conditions is not hearsay . . . The statement is offered against an opposing party and ... was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The Court will consider unsworn statements by Waldschmidt and Bailey and other AutoZone employees as admissions under Rule 801 to the extent that a witness has testified that he or she heard Waldschmidt or Bailey or another AutoZone agent make the pertinent statement and the statement regards a matter within the scope of the employment relationship. To the extent that Wright offers evidence that a non-witness told Wright that he or she heard from Waldschmidt, Bailey, or another AutoZone agent, the proffered statement constitutes hearsay within hearsay, and will not be admitted unless "each part of the combined statements conforms with an exception to [Rule 801]." Fed. R. Evid. 805.

[8]AutoZone raised an objection to this testimony during the deposition on the basis of leading, speculation, and foundation. However, because Marshall's opinion is based on Marshall's observation of Waldschmidt during Marshall's employment, and Marshall provided specific examples during his testimony to support his opinion, the objection is overruled.

night before.  However, it was false: she had not miscounted the money.  As a direct result, she was disciplined with a "corrective action review."  (*Id.* at 907.)[9]

- Blackamore witnessed Wright complain to Waldschmidt that Waldschmidt treated Wright differently because she was a woman.  (Blackamore Dep., Ex. F, Docket no. 40, Page ID 905.)  Waldschmidt denies that Wright complained to him about sex discrimination.  (Waldschmidt Dep., Ex. G, Docket no. 40, Page ID 948–49.)

- Wright was bothered enough by the unfavorable scheduling, heckling, name calling, and other behavior by Waldschmidt and her co-workers that Wright reported the behavior to Waldschmidt.  (Wright Dep., Ex. D, Docket no. 40, Page ID 784–86.)  Wright also complained about Waldschmidt's unequal treatment of her and the hostile work environment to Waldschmidt, Bailey, and Fowler.  (*Id.* at 785–86, 778.)  To report it to Fowler, Wright used the corporate human resources 1-800 number that she was given in an employee handbook.  (*Id.* at 777.)

- Waldschmidt failed to promote Wright despite her qualifications, and instead promoted male employees.  (*See* Wright, Dep., Ex. D, Docket no. 40, Page ID 781; Marshall Dep., Ex. E, Docket no. 40, Page ID 843–44; Terlisner Dep., Ex. I, Docket no. 40, Page ID 1036, 1039.)

First, AutoZone argues that Wright cannot establish a prima facie case for harassment because any harassment Wright may have experienced was not sex-based harassment.  Specifically, AutoZone argues that name-calling like "old ass bitch," is insufficient to constitute sex-based harassment.  However, this Court must view evidence of alleged sexual harassment in "the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility."  *Williams*, 187 F.3d at 562, 563.  The Sixth Circuit has rejected the view that the standard for evaluating harassment varies depending on the work context—in other words, a court may not apply a more lenient standard "in the context of a blue collar environment where crude language is commonly used by male and female employees" because it is "illogical" that "a woman who

---

[9]It appears from the record that Wright was unaware of Waldschmidt and Blackamore's conspiracy to have Wright disciplined for this fabricated misconduct.  As such, the Court will not consider it for purposes of evaluating the subjective or objective components of the "hostile or offensive" element of her prima facie case.  However, it is relevant corroborating evidence for purposes of animus.

chooses to work in the male-dominated trades relinquishes her right to be free from sexual harassment." *Id.* at 564.

In support of its argument, AutoZone cites *Schemansky v. California Pizza Kitchen, Inc.*, 122 F. Supp. 2d 761, 776 (E.D. Mich. 2000) and *Galloway v. General Motors*, 78 F.3d 1164, 1167 (7th Cir. 1996), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 & n.11, 122 S. Ct. 2061, 2074 & n.11 (2002)).  In *Schemansky*, a federal district court found that the plaintiff had failed to establish that she was subjected to harassment based on sex because the only evidence that the plaintiff's co-workers had harassed her on the basis of sex was that one called her a "bitch" in Spanish.  In *Galloway*, the court found that although the phrase "sick bitch" is "rarely used of heterosexual males, it does "*not necessarily* connote some specific female characteristic" or communicate that a woman is "unworthy of equal dignity in respect."  78 F.3d at 1167 (emphasis added).  Thus, within the context of other verbal abuse that suggested a "personal animosity" between coworkers after a failed sexual relationship, and absent other evidence of sex-based harassment, the Seventh Circuit panel concluded that the plaintiff had not established that the harassment was based on sex.  These cases are distinguishable from the present case because, unlike in *Schemansky* and *Galloway*, Wright has produced evidence to support the existence of animus against women employees.

Viewing the totality of the circumstances, Wright has presented sufficient circumstantial evidence for a reasonable jury to find that Wright was treated unequally based on her sex.  *See Williams*, 187 F.3d at 565 (holding that a plaintiff must show that "but for the fact of her sex, she would not have been the object of harassment").  For example, AutoZone employees have testified that they observed actions and heard statements by Waldschmidt suggesting that he was motivated by anti-female animus.  In addition, Waldschmidt's allegedly preferential treatment of male

employees in scheduling and consistent promotion of male employees over Wright between 2006 and 2009 corroborates Wright's argument that the unequal treatment was sex-based.[10,11,12] Altogether, Wright's proffered evidence is sufficient for a reasonable jury to draw a reasonable inference that the harassment Wright experienced was based on her sex.

Second, AutoZone argues that Wright has not shown that the harassment was sufficiently severe and pervasive to create a hostile or offensive work environment. "In order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283 (1998) (citing *Harris*, 510 U.S. at 21–22, 115 S. Ct. at 370–71). The objective test requires that a plaintiff show that a reasonable person would find the environment objectively hostile. *Williams*, 187 F.3d at 568. "The subjective test must not be construed as requiring that a plaintiff feel physically threatened. Instead, the victim must 'subjectively perceive the environment to be

---

[10] AutoZone argues that events occurring prior to April 24, 2009 are time-barred because Wright was required to file her EEOC charge within 300 days of any allegedly unlawful conduct. *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R.*, 536 U.S. at 104–05, 122 S. Ct. at 2068. This argument is addressed in more detail with respect to Wright's sex discrimination claim. However, for purposes of Wright's sexual harassment claim, the Court may consider Wright's proffered evidence about Waldschmidt's discriminatory scheduling and failure to promote Wright because those actions contributed to a hostile work environment, even if they occurred outside the 300-day window. *See, e.g.*, *Nat'l R.R.*, 536 U.S. at 119, 122 S. Ct. at 2075–76; *Austion v. City of Clarksville*, 244 F. App'x 639, 649–50 (6th Cir. 2007) ("Moreover, he can rely on past incidents, including the time-barred acts of discrimination, such as the 2001 and 2002 promotion denials and the 1998 demotion, in establishing his hostile work environment claim.").

[11] The parties do not contest that Wright was qualified for the promotions. Terlisner's testimony corroborates that Wright was qualified for the position of Commercial Sales Manager and Terlisner thought it was odd that Wright did not receive the position given her qualifications. In fact, because Wright was not promoted, Terlisner approached Waldschmidt to ask why he did not promote Wright. Terlisner also testified that Wright was qualified for the Assistant Manager position.

[12] Autozone argues that because Wright only alleges in her Complaint that she was denied a promotion to the position of "Store Manager," any reference to other positions is untimely. (Def.'s Br., Docket no. 36, Page ID 388.) However, Wright clearly specified in her deposition that she was referring to several managerial positions, including Commercial Sales Manager and Assistant Store Manager—as opposed to the general Store Manager position—for which she alleges she was denied a promotion. Thus, AutoZone was on notice of Wright's argument. As there is no discernable prejudice to AutoZone, the Court will consider Wright's arguments.

abusive.'" *Id.* at 566 (quoting *Harris*, 510 U.S. at 21, 114 S. Ct. at 370).  "[T]he subjective component . . . does not require that a plaintiff report a hostile work environment.  A plaintiff can be subjected to sexual harassment sufficiently severe or pervasive as to constitute a hostile environment and yet, for a number of valid reasons, not report the harassment." *Id.* at 566.  To determine whether an environment is sufficiently hostile or abusive, a court should look at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787–88, 118 S. Ct. at 2283 (internal quotation marks omitted).  "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788, 118 S. Ct. at 2283 (citing *Oncale*, 523 U.S. at 81, 118 S. Ct. at 1003) (internal citations omitted).  "Importantly, the question of whether conduct is severe or pervasive is 'quintessentially a question of fact.'" *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)).

AutoZone argues that Wright "cannot" prove the subjective requirement because she testified that the harassment "did not interfere with her ability to do her job."  (Def.'s Br., Docket no. 36, Page ID 384.)  For this proposition, AutoZone cites Wright's deposition, which reads:

Q:     Did you enjoy your job at AutoZone?
A:     I loved my job at AutoZone.
Q:     Do you think you did a good job for AutoZone?
A:     Yes, ma'am.
Q:     Do you think you performed your job in a satisfactory manner throughout your employment with AutoZone?
A:     I'm sorry?
Q:     Do you feel like you performed your job at AutoZone in a satisfactory manner throughout your employment with the company?
A:     For the most part, yes, ma'am.

14

Q:     I mean, you gave no reason for AutoZone to complain about your work
        performance, did you?
A:     No ma'am.
Q:     You showed up to work every day and did your job?
A:     Yes, ma'am.

(Wright Dep., Ex. 1, Docket no. 36, Page ID 466–67.)

AutoZone's argument that this testimony precludes a subjective finding of a hostile environment is flawed.  A plaintiff must show that "the harassment unreasonably interfered with the plaintiff's work performance *or* created a hostile or offensive work environment that was severe and pervasive."  *Fenton*, 174 F.3d at 830 (emphasis added) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998)).  That Wright enjoyed her job at AutoZone and thought that she performed her job well is not mutually exclusive with a hostile environment.  Other evidence supports that Wright was keenly aware that she was treated differently than her male colleagues.  Wright thought the environment was abusive enough to report it—multiple times—to various supervisors.  Wright has also introduced evidence to support her contemporaneous belief that her unequal treatment affected the terms, conditions, or privileges of her job: she received "the crazy schedule" of closing the store frequently, she believed she was not given equal consideration for promotions, and she believed she was terminated as a result of discrimination.  It is true that Wright was not aware of the specific steps Waldschmidt and Blackamore took to have her terminated, but Wright had heard rumors from multiple sources that she was being targeted to be fired, making her subjectively aware.[13]

Wright's statement to Fowler during an investigation of the July 30, 2009 incident illustrates Wright's subjective view.  Despite that she had reported unequal treatment by Waldschmidt to

_____

[13]The rumors are admissible as non-hearsay for the limited purpose of the subjective component of Wright's prima facie case because they are not offered "to prove the truth of the matter asserted in the statement," but offered to show the effect of the statements on the listener's mind.  *See* Fed. R. Evid. 801(c)(2).

Fowler, Fowler focused his investigation on whether Wright had used vulgarity in front of a customer. Wright thought that it was odd and Fowler's focus was misplaced: "Mr. Fowler took what I thought was the least important issue[—] Dond and myself altercation [sic] and put it foremost [] when being assertive and using adult language is common in this store." (Ex. Y, Docket no. 42, Page ID 1095.) Wright has also introduced evidence that a similarly situated male employee had used vulgarity in front of customers with Waldschmidt's knowledge and the male employee was not disciplined or terminated. (Marshall Dep., Ex. E, Docket no. 40, Page ID 860.) Thus, Wright was subjectively aware of the hostile environment and has sufficient evidence for a reasonable jury to find that the treatment altered the terms, conditions, or privileges of her employment. That Wright may have performed well in the face of adversity does not support that she did not perceive the AutoZone store to be hostile and offensive.

AutoZone also argues that Wright cannot establish that the alleged conduct was objectively unreasonable. AutoZone cites *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000) for the proposition that courts have found more serious allegations than Wright's to be insufficiently severe. In *Burnett*, the court found that three offensive but isolated comments over a period of six months did not affect a condition of the plaintiff's work environment because the comments were not "commonplace, ongoing, or continuing" and the plaintiff failed to offer any evidence of how the conditions of her employment had changed as a result of harassment, such as demotion or termination. *See id.* at 983–84. The instant case is distinguishable from *Burnett* because Wright alleges specific terms, conditions, or privileges of her employment that may have been altered as a result of her employment, including her unreasonable schedule and termination. A reasonable person could find that the discriminatory scheduling, failure to promote, heckling, name calling,

16

targeting for termination, and eventual termination—when viewed as a totality of circumstances—transformed Wright's work environment into an objectively hostile or abusive one.

Finally, AutoZone argues that even if Wright's allegations were accurate, AutoZone "is not liable because AutoZone did not fail to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." (Def.'s Br., Docket no. 36, Page ID 384.)  Upon closer reading, however, AutoZone's argument is not that AutoZone took corrective action, but that Wright failed to properly report the harassment.  (*Id.*)

In *Meritor*, 477 U.S. at 70–71, 106 S. Ct. at 2407–08, the United States Supreme Court observed that "courts have consistently held employers liable for the discriminatory discharges of employees by supervisory personnel, whether or not the employer knew, or should have known, or approved of the supervisor's actions."  "[N]either the existence of a company grievance procedure nor the absence of actual notice of the harassment on the part of upper management would be dispositive of such a claim; while either might be relevant to the liability, neither would result automatically in employer immunity." *Faragher*, 524 U.S. at 792, 118 S. Ct. at 2285.  However, Title VII places "some limit on employer responsibility for the creation of a discriminatory environment by a supervisor," and "Title VII does not make employers automatically liable for sexual harassment by their supervisors." *Id.* (citing *Meritor*, 477 at 69–70, 106 S. Ct. at 2406–07). In *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998), the Supreme Court held that an employer's liability for sexual harassment by its employees is governed by common law agency principles, and adopted § 219(2) of the Restatement (Second) of Agency as guiding principles. *Id* at 758, 118 S. Ct. at 2267; *Fenton*, 174 F.3d at 829.  Section 219(2) provides:

> A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
> (a) the master intended the conduct or the consequences, or
> (b) the master was negligent or reckless, or

17

(c) the conduct violated a non-delegable duty of the master, or

(d) *the servant purported to act or speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.*

Restatement (Second) of Agency § 219(2) (emphasis added). Thus, depending on the degree of agency, an employer may be liable for harassment by a supervisor, or a non-supervisory employee. "The proper analysis ... calls not for a mechanical application of the indefinite and malleable factors set forth in the Restatement, but rather an inquiry into the reasons that would support a conclusion that the harassing behavior ought to be held within the scope of a supervisor's employment, and the reasons for the opposite view." *Faragher*, 524 U.S. at 797, 118 S. Ct. at 2288 (internal citations omitted).

In this case, AutoZone contends that Wright failed to follow AutoZone's harassment procedure. AutoZone cites this Court's decision in *Diepenhorst v. City of Battle Creek*, No. 1:05-CV-734, 2007 WL 1141492, at *12 (W.D. Mich. Apr. 17, 2007), for the proposition that an employee who fails to follow an employer's procedure for reporting harassment has not put the company on notice of harassment. In *Diepenhorst*, this Court observed that "[a]n employer 'must have notice of alleged harassment before being held liable for not implementing action,'" and "[a]n employer on notice of alleged harassment may avoid liability 'if it adequately investigated and took prompt and appropriate remedial action.'" *Id.* at *11 (quoting *Chambers v. Trettco, Inc.*, 463 Mich. 297, 312, 614 N.W.2d 910, 916 (2000)). This Court then observed that the plaintiff "did not report the incident to *any superiors* until after employment ... ended and she was pressured to do so by members of the police department"). *Id.* (emphasis added). Thus, *Diepenhorst* does not provide support for AutoZone's position that AutoZone is immune from liability because Wright allegedly failed to follow AutoZone's policy. AutoZone does not cite any authority for the proposition that failure to follow an employer's sexual harassment policy immunizes an employer from liability.

18

Additionally, AutoZone has not produced AutoZone's sexual harassment reporting policy nor explained how Wright's complaints deviated therefrom. To the contrary, Wright testified that she called the 1-800 number she was given in an employee handbook to report her supervisor's treatment. She testified that she made complaints about Waldschmidt and the hostile work environment to Waldschmidt, Bailey, and Fowler.

The first question, therefore, is whether AutoZone can be held liable for sexual harassment by Waldschmidt. Additionally, because some of the alleged harassment is based on conduct by Wright's co-workers, the Court must determine whether AutoZone can be liable for sexual harassment by Blackamore and other non-supervisory employees.

Regarding Waldschmidt, the evidence supports that AutoZone may be held liable for Waldschmidt's alleged sexual harassment of Wright. An employer may be held vicariously liable for "tortious conduct of a supervisor made possible by abuse of his supervisory authority, and [] the aided-by-agency-relation principle embodied in § 219(2)(d) of the Restatement provides an appropriate starting point for determining liability." *Faragher*, 524 U.S. at 802, 118 S. Ct. at 2290. Wright has produced evidence to support that Waldschmidt may have abused his authority in scheduling, administering discipline, and promoting employees. Moreover, although the parties hotly contest whether Waldschmidt had the authority to terminate employees, Wright has produced evidence that Waldschmidt had significant input into promotion and termination at the Benton Harbor store. Although AutoZone has introduced evidence that Waldschmidt lacked actual authority to terminate employees, at a minimum, Wright has established an issue of fact as to whether Waldschmidt had apparent authority to promote and terminate employees.[14] Moreover,

---

[14]Waldschmidt appeared to have the authority to promote and terminate employees. For example, Waldschmidt promoted Marshall on Bailey's behalf at least twice. (Marshall Dep., Ex. E, Docket no. 40, Page ID 843–44.) In addition, Blackamore had witnessed Waldschmidt "send somebody home, tell them they [were] fired, and not to come back." (Blackamore Dep., Ex. F, Docket no. 40, Page ID 906.) Moreover, Waldschmidt and Bailey were "close friends"

regarding the aided-by-agency principle of the Restatement, Wright argues that Waldschmidt was indirectly involved in her termination because he pressured lower-level employees to give false or misleading statements to Fowler about the July 30, 2009 incident, on which Lewis relied. The evidence supports that Waldschmidt's influence was aided by his authority. Therefore, agency principles support that AutoZone may be held liable for Waldschmidt's alleged harassment.

Regarding harassment by Wright's non-supervisory coworkers, AutoZone may be held liable to the extent that AutoZone "knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action." *Fenton*, 174 F.3d at 830. Wright has testified that she reported Blackamore's treatment of her to Waldschmidt. It is not clear if Wright mentioned harassment by any other coworkers, such as their failure to assist her on the sales floor. Nonetheless, Wright's proffered evidence is sufficient to create a genuine issue of material fact as to whether AutoZone knew or should have known of any sexual harassment by non-supervisory employees.

Viewing the totality of the circumstances, Wright has produced sufficient evidence to establish a prima facie case of hostile environment sexual harassment.

## B. Sex Discrimination Claims

Wright also alleges that AutoZone discriminated against Wright on the basis of sex in violation of Title VII and the ELCRA. "A plaintiff who lacks direct evidence of discrimination may still establish a prima facie case of discrimination . . . . Michigan courts utilize the federal *McDonnell Douglas* burden-shifting framework for evaluating discrimination claims founded upon

---

and Waldschmidt had significant input into promotion and termination decisions. (Terlisner Dep., Ex. I, Docket no. 40, Page ID 1036, 1039, 1040.) Bailey would visit the store regularly; that Bailey did not object to or overrule Waldschmidt's promotion or termination decisions could be construed to have communicated to lower-level employees that Waldschmidt was authorized to promote or terminate employees. (*See, e.g.*, Blackamore Dep., Ex. F, Docket no. 40, Page ID 906 (Q: "Brian, he didn't have the authority to terminate an employee, did he?" A: "I think he did. . . . I mean, a couple times I saw Brian just send somebody home, tell them they fired, not to come back.").)

circumstantial evidence." *In re Rodriguez*, 487 F.3d 1001, 1007–08 (6th Cir. 2007) (internal quotation marks and citations omitted) (citing *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462, 628 N.W.2d 515, 520–21 (2001)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). "When a plaintiff uses indirect evidence, she must establish a 'rebuttable prima facie case on the basis of proofs from which a factfinder could infer that [she] was the victim of unlawful discrimination.'" *Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 127 (6th Cir. 2005) (quoting *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 134, 666 N.W.2d 186, 193 (2003)). "[A] plaintiff may establish a prima facie case of prohibited discrimination by demonstrating that: (1) she was a member of a protected class; (2) adverse employment action was taken against her; (3) she was qualified for the position; and (4) she was treated differently than similarly-situated male employees." *Id.* "If a prima facie case is established, the employer has the burden of coming forward with a legitimate, nondiscriminatory reason for the adverse employment action. If the employer offers such evidence, the plaintiff has the burden of proving that the stated reason is merely a pretext for discrimination. This burden merges with the plaintiff's overall burden of proving the claim." *Id.* at 127–28 (internal citations omitted).

Here, Wright argues that she was subjected to three adverse employment actions on the basis of sex: (1) Waldschmidt failed to promote her to several positions, (2) Waldschmidt favored male employees in assigning the work schedule, and (3) AutoZone terminated her.

## 1.    Failure to Promote

Wright alleges that AutoZone failed to promote her to three positions: store manager, assistant store manager, and commercial sales manager.[15] (Wright Dep., Ex. D, Docket no. 40, Page

---

[15]*See* note 12.

ID 803.)  Wright's Title VII failure to promote argument must fail because it is time-barred, but Wright's ELCRA sex discrimination claim will survive summary judgment.

A plaintiff alleging Title VII employment discrimination must file an EEOC charge within 300 days of the date the alleged unlawful practice occurred.  42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R.*, 536 U.S. at 104–05, 122 S. Ct. at 2068.  "In a deferral state such as Michigan, a charge of discriminatory conduct must be filed with the Equal Employment Opportunity Commission (EEOC) within 300 days after the alleged unlawful act occurs."  *Shoneboom v. Michigan*, 28 F. App'x 504, 505 (6th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e) and *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 111, 108 S. Ct. 1666, 1669 (1988); *see also Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (applying the 300-day period in Ohio, another "deferral state")).

Wright filed her EEOC charge on February 18, 2010.  (Ex. A, Docket no. 40.)  Therefore, all conduct occurring prior to April 24, 2009 is time-barred for purposes of her sex discrimination claims.  Although Wright alleges that she was denied promotions on several occasions since Waldschmidt became the general store manager in 2006, she has not produced evidence that any of those denials occurred on or after April 24, 2009.  Therefore, Wright cannot assert a failure to promote as a basis for her Title VII sex discrimination claim.

Regarding Wright's ELCRA claim, a three-year statute of limitation applies.  Mich. Comp. Laws § 600.5805(10); *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263, 278, 696 N.W.2d 646, 655 (2005).  Thus, to the extent that Wright alleges an ELCRA claim for failure to promote occurring before November 23, 2008, Wright's claim is time-barred.

Wright alleges that she began experiencing sex discrimination as early as March 2008, and that it continued through her termination in August 2009.  (Wright Dep., Ex. D, Docket no. 40, Page ID 768.)  She has produced evidence to support that before the time of her termination she was

qualified for at least one promotion but Waldschmidt routinely promoted similarly situated or less qualified male employees instead of Wright.  AutoZone argues that Waldschmidt lacked the authority to make promotion decisions, and Wright lacks evidence that the actual decision makers—Bailey, Fowler, and Lewis—engaged in sex discrimination.  However, as discussed above, Wright has produced sufficient evidence for a reasonable jury to find that Waldschmidt was a decision maker for promotions in the Benton Harbor AutoZone store.  Thus, viewing Wright's evidence in a light most favorable to the nonmoving party, Wright's ELCRA sex discrimination claim on the basis of Waldschmidt's failure to promote her will survive summary judgment.

**2.      Unfavorable Scheduling**

Wright also argues that Waldschmidt gave preferential treatment to male coworkers in scheduling.  AutoZone argues that less favorable scheduling does not constitute an adverse employment action for purposes of a sex discrimination claim.  To be constitute an adverse employment action, a plaintiff must show there was a change in the terms or conditions of her employment in a way that was materially adverse to her.  *Wills v. Pennyrile Rural Elec. Co-op. Corp.*, 259 F. App'x 780, 783 (6th Cir. 2008).  "To be materially adverse, a change must be of the magnitude of a termination of employment, a demotion, a decrease in salary, a material loss of benefits; it must be more than a mere inconvenience." *Id.*  "Employment actions that are *de minimis* are not materially adverse, and are not actionable under Title VII. *Id.*; *see also Cole v. Dep't of Corr.*, No. 258053, 2006 WL 2613458, at *2 (Mich Ct. App. Sept. 12, 2006) ("When determining if an adverse employment action exists, courts must keep in mind the fact that workplaces are rarely idyllic ... that an employee is displeased by an employer's act or omission does not elevate the act or omission to the level of a materially adverse employment action." (internal quotation marks and citation omitted)).

23

Here, while perhaps more than "a mere inconvenience," unfavorable scheduling does not rise to the level of a demotion, decrease in salary, or similar material loss of benefits.  Therefore, Wright cannot establish a prima facie case for sex discrimination on the basis of scheduling under either Title VII or the ELCRA.

**3.     Termination**

Finally, Wright alleges that AutoZone discriminated against her on the basis of her sex when it terminated her.  For purposes of a discriminatory discharge claim, a plaintiff must show that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than a similarly situated, non-protected employee.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).  To prove an employee is "similarly situated," "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it."  *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 820 (E.D. Mich. 2011) (internal quotation marks and citation omitted).  However, "*McDonnell Douglas* does not require that the identical prima facie analysis be used in every discriminatory discharge case.  As the Supreme Court has explained, the prima facie proof required by a plaintiff in a Title VII case may differ with each factual situation."  *Mills v. Ford Motor Co.*, 800 F.2d 635, 639 (6th Cir. 1986) (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575, 98 S. Ct. 2943, 2948 (1978) and *Beaven v. Commonwealth of Ky.*, 783 F.2d 672, 676 (6th Cir. 1986)).  "All the plaintiff must establish at the prima facie stage is that her discharge raised an inference of discrimination."  *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981)).

24

AutoZone contests the fourth element—that a similarly situated, non-protected employee was not terminated for using vulgarity in front of a customer.  AutoZone argues that Wright must establish that Lewis, Wright's third-level supervisor—whom AutoZone contends made the official decision to fire Wright—was aware of another employee who used vulgarity in front of a customer but was not terminated.

"[I]f a supervisor performs an act motivated by an [illegal] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable."  *Staub v. Proctor Hosp.*, __ U.S. __, 131 S. Ct. 1186, 1194 (2011).  "[L]iability attaches when the biased intermediate employee's actions are 'a causal factor of the ultimate employment action.'"  *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 352 (6th Cir. 2012) (quoting *Staub*, 131 S. Ct. at 1193).  "The intermediate employee's actions need not be the sole cause of the adverse action; '[t]he decisionmaker's exercise of judgment is also a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes.'"  *Id.* (quoting *Staub*, 131 S. Ct. at 1192).  However, "[a]n employer will not be liable for its intermediate employee's discrimination if 'the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action.'"  *Id.* (quoting *Staub*, 131 S. Ct. at 1193).

Here, AutoZone argues that Waldschmidt "had no involvement in the investigation beyond providing his written statement," (Waldschmidt Dep., Ex. 2, Docket no. 36, Page ID 541), "never saw any statements by other individuals," (*id.* at 544), and "did not influence Mr. Lewis's decision to terminate Plaintiff's employment," (Lewis Decl., Ex. 3, Docket no. 36, Page ID 549).  However, Wright has introduced evidence sufficient to establish a genuine issue of fact as to whether Waldschmidt was motivated by illegal animus, and whether he took steps to influence the content

of the statements made by employees to Fowler, on which Lewis relied.  Thus, Wright has introduced sufficient evidence to establish a genuine issue of fact that Waldschmidt's animus was a proximate cause of Wright's termination.  At minimum, Wright has shown the circumstances surround her discharge raise an inference of discrimination.  *Mills*, 800 F.2d at 639.

Even if this Court were to require Wright to introduce evidence that a similarly situated employee was treated differently, Marshall testified that at least one male employee holding the same position as Wright used vulgarity in front of a customer, that Waldschmidt was aware, and Waldschmidt did not suspend or terminate the offending employee.  (Marshall Dep., Ex. E, Docket no. 40, Page ID 859.)  This is sufficient to show that a similarly situated employee engaged in comparable behavior but Waldschmidt selectively chose not to report the male employee to a higher authority or take other disciplinary action.

Taken altogether, Wright has established a prima facie case for sex discrimination on the basis of her termination.  The burden therefore shifts to AutoZone to offer a legitimate, non-discriminatory reason for Wright's termination.  AutoZone argues that it terminated Wright in August 2009 for use of hostile and abusive language and conduct, unprofessional behavior, and loss of confidence.  AutoZone argues that Wright was terminated while Blackamore was not terminated because Wright used vulgarity in front of a customer, but Lewis had no evidence that Blackamore had done so.

Once an employer has offered a legitimate, non-retaliatory reason for termination, the burden shifts to the plaintiff to show that the employer's proffered reason is a pretext for discrimination.  To establish pretext, a plaintiff is required to show by a preponderance of the evidence that (1) the proffered reason had no basis in fact, (2) the reason did not actually motivate the plaintiff's discharge, or (3) the reason was insufficient to motivate discharge.  *Manzer v. Diamond Shamrock*

26

*Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, *as recognized by Geiger v. Tower Auto*, 579 F.3d 614, 621 (6th Cir. 2009).

### a. Did Not Actually Motivate Discharge

Wright first argues that AutoZone's proffered reason for termination did not actually motivate plaintiff's discharge. "[W]hen an 'employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee,' the employer's actions constitute 'the very definition of pretext.'" *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) (quoting *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007)).

Wright offers evidence of the following facts to support that AutoZone's proffered reason did not actually motivate its decision to terminate her: Waldschmidt targeted Wright for termination and was making a "paper trail" to support her termination; Waldschmidt had previously, deliberately falsified a corrective action to discipline Wright for a mistake Waldschmidt knew Wright did not make; Waldschmidt asked at least one employee to falsify his statement to Fowler about the July 30, 2009 incident; Waldschmidt had the power to influence the statements of lower-level employees; and Terlisner overheard two managers state that an AutoZone employee staged the customer telephone complaint about Wright to corroborate that a customer had been in the store. (Terlisner Dep., Ex. I, Docket no. 40, Page ID 1030.)[16]

This is sufficient for a reasonably jury to find that AutoZone's proffered reason was a pretext for discrimination.

---

[16] *See* note 7 regarding unsworn statements by AutoZone employees. Upon careful consideration of the evidence, the Court concludes that the statement falls within the scope of the declarant-managers' employment because they were discussing customer complaints as they related to a matter of employee discipline. *See* Fed. R. Evid. 801(d)(2)(D).

### b.  Insufficient to Motivate Discharge

Second, Wright argues that AutoZone's proffered reason was insufficient to motivate discharge.  In support, Wright has produced evidence that vulgarity was exceptionally common at AutoZone, employees sometimes swore in the presence of customers, and supervisors, including Waldschmidt, were aware of this behavior.  Wright has also produced Marshall's testimony that at least one male employee holding the same position as Wright had used vulgarity in front of a customer and Waldschmidt had not disciplined, fired, or reported him to a higher supervisor.  Marshall also testified that swearing in the presence of customers could be considered "normal," which is probably why the employee was not disciplined.  (Marshall Dep., Ex. E, Docket no. 40, Page ID 860.)

Thus, Wright has produced sufficient evidence from which a reasonable jury could conclude that AutoZone's proffered reason for discharge was insufficient to motivate discharge.

### C.  Retaliation Claims

Finally, Wright alleges claims for retaliatory discrimination under Title VII and the ELCRA. Specifically, Wright alleges that Waldschmidt retaliated against her for reporting Waldschmidt's unequal treatment of her the basis of her sex.  To state a prima facie claim for retaliation, a plaintiff must produce evidence that: (1) she engaged in a protected activity, (2) the employer was aware of the protected activity, (3) the employer took an adverse employment action against her, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the alleged adverse employment action. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000); *Garg v. Macomb Cnty.*

*Cmty. Mental Health Servs.*, 472 Mich. 263, 273, 969 N.W.2d 646, 653 (2005).[17]  To be an adverse

action, it must have been "materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*

*N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotation

marks omitted).  The *McDonnell Douglas* burden-shifting framework also applies to retaliation

claims.  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

In this case, Wright limits her retaliation argument to the adverse action of termination.

AutoZone disputes the second and fourth elements—that AutoZone was aware of Wright's protected

activity, and that there was a causal connection between the activity and the adverse employment

action.

First, regarding AutoZone's awareness, AutoZone argues that Wright has failed to produce

evidence that Lewis was aware of Wright's harassment complaint against Waldschmidt.  Again, a

reasonable jury could find that Lewis was not the only decision-maker involved in Wright's

termination.  Wright has produced evidence showing that she complained about Waldschmidt's

unequal treatment of her on the basis of sex to Waldschmidt, Bailey, and Fowler by way of the 1-

800 number, among others.  She has also offered evidence that Waldschmidt was aware that Wright

had reported Waldschmidt's unequal treatment of her to his superiors.

Second, regarding the causation element, Wright has produced evidence to show that after

Waldschmidt learned that Wright reported him, Waldschmidt began making a paper trail to have

Wright fired.  Viewed in a light most favorable to Wright, after the July 30, 2009 incident, Wright

---

[17]"Although Michigan courts assess claims of retaliation under the ELCRA using the same general framework as that used by federal courts, *see West v. Gen. Motors Corp.*, 469 Mich. 177, 183–86, 665 N.W.2d 468, 471–73 (2003) (citing federal cases), the standard for causation is higher.  The Michigan Court of Appeals has held that '[t]o establish causation, the plaintiff must show that his participation in activity protected by the [EL]CRA was a "significant factor" in the employer's adverse employment action, not just that there was a causal link between the two.'" *Mickey*, 516 F.3d at 523 n.2 (quoting *Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 315, 628 N.W.2d 63, 70 (2001)).

has shown that Waldschmidt asked Blackamore to falsify his statement to Fowler to state that there were customers in the store and that Wright used vulgarity but Blackamore had not.  When asked why Waldschmidt asked Blackamore to lie, Blackamore stated, "[b]ecause [Wright] was always complaining, calling higher up on [Waldschmidt]."[18]  (Blackamore Dep., Ex. F, Docket no. 40, Page ID 906.)  This is sufficient to make out a prima facie case for retaliation under Title VII, and sufficient for a reasonable jury to find retaliation was a "significant" factor for purposes of the ELCRA.

As AutoZone has offered a legitimate, non-discriminatory reason for Wright's discharge, Wright must establish that AutoZone's proffered reason was a pretext for discrimination.  The parties advance the same arguments regarding pretext as the arguments on her sex discrimination claim.  *See supra* section II.B.3.  Finding Wright's evidence is sufficient for a reasonable jury to find that AutoZone's proffered reason did not motivate Wright's discharge, or was insufficient to motivate her discharge, AutoZone's motion for summary judgment on this claim will be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant AutoZone's Motion for Summary Judgment (docket no. 35) in part and deny it in part.

A separate order will issue.

Dated:  June 17, 2013                                         /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE

---

[18]The Court notes that Blackamore's testimony about Waldschmidt's motivation is more complex than this isolated statement suggests, and supports the possibility that Waldschmidt had mixed motives.  For example, during Blackamore's deposition, Blackamore testified that Waldschmidt "hated" Wright "[b]ecause she called him and reported on him, or she be complaining about what other people do."  (Blackamore Dep., Ex. F, Docket no. 40, Page ID 905.)  Other evidence corroborates that Waldschmidt's motivation may have been more than just retaliatory.

30